of our sitting here in Montgomery, Judges Brasher and Karnes and I are pleased to be with you, glad you're with us. Before we get going, just a few rules of the road. Most importantly, please know that we have read your stuff. We've read the briefs, the cases, the statutes, the underlying record materials, so don't waste your own time with us with a bunch of factual and procedural ramp up. Just get to it. Two, traffic light system, green go, yellow slow, red, please wind it up. I'm trying to get better about being a timekeeper. I'm sometimes a little lax in that category, but I'm trying to flex my muscles a little bit more this week. So when you see the red light, do just respect the court's time and begin to wrap up. All right, very well. With that, let's call the first case. Vote.org and others versus the Secretary of the State of Florida, Supervisor of Elections. We've got 23-13727. Will you pronounce your last name for me? Inquanto. Got Mr. Inquanto here for the appellant. We've got Mr. Maros and Mr. Dickey here for the appellees. And you've reserved four minutes for rebuttal, correct? Very well. Fire away. Good morning. May it please the Court. This is Owen Inquanto on behalf of the appellants. Congress enacted the 1964 Civil Rights Act to eradicate subtle but persistent attempts to disenfranchise qualified citizens. Through the materiality provision, Congress prohibited election officials from denying any individual the right to vote due to a paperwork error that is not material in determining voter qualifications. And yet in Florida, election officials may reject voter registration applications simply because the voter signed the document electronically or with a stylus rather than a pen and an ink, which has no bearing on whether a voter is a U.S. citizen over the age of 18, a resident of Florida, or otherwise competent to vote. Rather than engage with the Civil Rights Act's plain text, the district court concluded categorically, without evidence or discovery, that physically signing a form carries a solemn weight that makes it material in determining qualifications. What kind of, I thought, one of your best arguments, well, you've got a couple, but one of the best arguments was, let's just send it down and have an evidentiary hearing on that. That's what every other court has done, et cetera. But what's the nature of the evidence on the solemnity issue? Who do you call? I know everybody can get an expert for $400 an hour to come in and say yes, no, and all that. But what's the actual evidence going to be? Well, there has been no evidence submitted as to solemnity. But you're asking for a hearing, a remand. I assume the remand isn't to give the judge just a second chance to think about it. You're going to put on some evidence or want to. What evidence are you going to put on on the solemnity issue? Well, first, the evidence we'll put on is the contextual nature of the registration process in Florida. And there will be evidence that would contradict that purported reliance on solemnity. For example, the fact that individuals who have driver's license may register online without signing the form physically. And if those individuals do not have to sign the registration form physically with the attestations that the state or the secretary claims is necessary to demonstrate solemnity. What exists that permits them to do that? Is there a Florida regulation? Is there a Florida public policy? Is it in the Florida statute? Yes. Florida law does permit individuals who do not, who have driver's license or state ID, to register online without a wet ink signature. So what you said you're going to put on evidence to prove is a matter of Florida law. It's a matter of Florida law, but there's also the volume, right? If the majority of voters are registering without a wet ink signature, that undermines the argument that solemnity is so important and so material in determining qualifications that it must be law. Another thing that we would submit is how election officials actually use the signature itself, right? Because the term in determining in 52 U.S.C. 10101, the phrase in determining voter qualifications, it signifies a process, right? In use of, in the process of doing something. And it indicates that it's not enough that the requirement be relevant. Minimal relevance is not sufficient. If election officials do not actually use the form of the signature or how it appears in any manner in determining qualifications, then that's another indication that it's not material in determining qualifications. And we know that it's probably, they probably do not, and we know that evidence is likely to show that they do not. So you're saying that you need at an evidentiary hearing to sort of unpack empirically how the wetness of the signature either does or doesn't play into ascertaining qualifications to vote. That's correct. In addition to our argument that solemnity actually has nothing to do with whether something is material in determining qualifications. If we were to follow the Fifth Circuit, so I just wanted to address that. So the Fifth Circuit, correct me if I'm wrong in just how much, maybe I'll just ask, what do you say about the Fifth Circuit? First, we disagree with the Fifth Circuit's test. We believe it was profoundly atextual. But nonetheless, even if this court were to follow the Fifth Circuit's test, it's decidedly fact-based. It is a totality of the circumstances test that measures the fit between the interest advanced by the state and the regulation that plaintiffs seek to enjoin. The way I understand the Fifth Circuit's test, and this is why I would, is it sort of like a rational basis kind of test? Do you disagree with that? Am I reading that wrong? Slightly. I think there are a couple of different elements to it, which again, we don't believe are justified by the text of the statute. But one element of it is that totality of the circumstances test that measures the fit. And if you look at the Fifth Circuit's opinion in Caledon, what the Fifth Circuit considered, not just the letter of the law itself, but the Fifth Circuit also considered the actual, the way the voter registration form appears when someone tries to sign it electronically, where the attestation that the individual makes that they are qualified, where it appears when someone signs electronically. The screenshot from Vote.org's web application, the Fifth Circuit considered all of these things as part of the totality of circumstances test. And the Fifth Circuit also said, it made clear that a wet signature requirement cannot be easily upheld as material. It also said it cannot easily be struck down as immaterial. In other words, what the Fifth Circuit was getting at is one cannot say as a matter of law that solemnity automatically justifies a wet signature requirement and automatically establishes a wet signature requirement is material in determining voter qualification. So the short answer, if I'm sort of cutting through the haze here, the short answer, your short answer to Judge Brasher's question is sort of different procedural posture. That was on summary judgment. We are here on a motion to dismiss. Who knows what will happen in summary judgment? You know, maybe things would go differently if there's evidence to back up all of the sort of the arguments that the state has put forward. Maybe the case looks a little different and it goes the other way. Absolutely. And that's because the materiality determination is contextual. It depends on how the state's voter registration process works and how it's used. Well, let me ask you just as a matter of theory, I guess, like how would the state prosecute someone for registering to vote illegally? So you register to vote and you say you're a citizen, you know, you fill out the form and you don't sign it physically. You just put your name on there. How would they prosecute someone for registering to vote, even though they weren't authorized to, without a signature requirement? Well, the exact same way the state would prosecute someone who registered online without signing physically. And remember- But just to be clear, registration online is through the DMV, right? Not quite. Registration online is a separate registration process. What the state does is the state does not require those individuals to sign anything in person. It just transposes a signature they already provided on an entirely different form at the DMV with the non-enable application and places it on the application. And so, and remember, we are not challenging the signature requirement. We're just challenging the requirement that it be written. Yeah. And I think that's a good point because there is a- It seems odd to concede, and maybe, I mean, maybe it's not odd, but like that they need to have a signature requirement. It just doesn't have to be a physical signature requirement. Could you just explain how that makes sense? I would understand your position if you were saying they don't need a signature requirement at all. They just need you to type in your name, but you're not saying that. Certainly. I would analogize it to other cases and other instances that Congress was concerned about where the information that's being sought may be relevant, but the way in which the state is seeking that information then crosses the line into immateriality. For instance, one of the main concerns of Congress in passing the 1964 Civil Rights Act was the Louisiana Constitution's requirement that an individual enter their date or their age in the number of months and days. And there was actually a calculation that was built into the Louisiana Constitution, right? Now, age is undoubtedly relevant in determining voter qualifications, but asking someone to express their age in a way that requires them to conduct that mental calculation and write down the number of days and months, that is precisely the type of restriction that Congress sought to eradicate as immaterial in determining voter qualifications, because someone could just enter their age. But if the purpose, which you've stressed in your brief, of enacting materiality provision was to prevent states from adding on technical requirements that maybe weren't as necessary as they should have been to be added on, is the more you've got, the more that somebody will slip up, and the more people you can disqualify. And I assume in the context of 1964, the more we'll get to decide what color people we're disqualifying. All right, but here's the deal. Once you stipulate, which you almost have to and you have, that signature requirements per se are okay. It's just the wet signature that gives an opportunity to screw up. Don't you have to have some convincing evidence that people are more likely to screw up a wet signature than an electronic signature? The plain text of the statute does not impose that evidentiary requirement. It's a straightforward question on whether the form of that signature is material. And I'll point to other instances in which courts have acknowledged that the form of the signature may be immaterial. And Diaz v. Cobb, for instance, the Southern District of Florida, acknowledged that in describing the types of immaterial requirements, it's a requirement that you enter your signature in a certain type of ink. In Ritter v. Migliore, Justice Alito even identified signing something electronically or by writing your name with a slash S as an example of a type of requirement that would be immaterial in determining voter qualifications. And it aligns with the case. So you're abandoning the idea that the purpose behind these kind of requirements is to trip people up and let the State disqualify them? Well, that may be the purpose behind the requirement being enacted. But in determining whether it's legal and determining... So you don't think that purpose matters in applying it to specific cases? No, the purpose doesn't matter. There's no intent. I'm sorry. Did you say does or doesn't? Doesn't matter. It's not an intent requirement. So you just kind of thought you'd give us a background in the briefs? I always thought you were arguing that's why we have it. And requiring a wet signature is just one other hurdle, one other opportunity for people to make a mistake and get disqualified. That's no longer your position. That's not your position. That is our position, that it is another hurdle that an individual may trip up. But I have an additional question after Judge Carnes is done. But if it is a hurdle, then there has to be a difference favoring more disqualifications from a wet signature than a non-original wet signature. Because otherwise, it's not a hurdle If there are more opportunities for screwing up, for example, with an electronic signature, then this is a blessing, not something that we should... I mean, you're getting unintended consequences. That's the situation. So my point is, wouldn't you have to prove that there's more opportunities to get stricken in an application with a wet signature than with an electronic non-wet signature? No, that is not a requirement under the materiality provision, and that is not part of the test. And I'm not aware of any court that has imposed that as part of the test. It's a straightforward question, which is whether the wet signature is material in determining voter qualifications. And if it is not, then that means the State cannot impose it as a requirement to register to vote. Can I ask you to address one of the arguments that the State makes, which is sort of a causation argument? They say, look, we actually don't deny anybody because they didn't sign the form, right? We give them an opportunity to cure. And so they say, this isn't a situation, and if you look at the text of the statute, this isn't a situation where the error or omission leads to your denial. It's a situation where, you know, we've given you the opportunity to cure, and you're sort of voluntarily deciding not to cure and that leads to your denial. Would you address that argument? I have two problems with that. First, section 52 U.S.C. 10101 subsection E defines vote to include registration. So the denial of a registration application is a denial of the right to vote. Second, it doesn't matter that there are multiple opportunities to comply with the illegal requirement because what the materiality provision does is it forbids that illegal requirement. I would analogize this to a different provision of the Voting Rights Act. 52 U.S.C. 10501, that's the provision that forbids literacy tests. It would be odd to argue that a state can actually now reimpose literacy tests as long as it keeps giving its citizens multiple opportunities to comply with that literacy test and to pass that literacy test. So that position would be something that we frowned upon, and I don't think that position would win in any court. And this is the same thing. The fact that individuals have multiple opportunities to comply with an illegal requirement does not mean that they have not been denied the right to vote. 52 U.S.C. 10501 imposes the same language. You cannot deny someone the right to vote for failure to comply with a test or device, including a literacy test. Well, here it says, though, the text is error or omission, I guess, and that's where it seems, you know, this is certainly not, the failure to sign the form with a wet signature isn't an error, right? It's not like a mistake that someone made. I mean, they're intentionally not doing that. Is it an omission that you've decided not to sign the form the way you're supposed to? Well, it is an error in the sense that it is not the requirement that the state imposed, but it's also omission in the sense that the application omits a physical written signature. I guess that's right. I guess I just, I think we all agree, and maybe I'm wrong, but I mean, it seems like this statute was directed at the situation where there's a registrar that's saying, look, state law, like you said, state law requires you to be 18, and I need you to count the number of days in this year, something like that, right? And sort of adding to a state requirement, and then you're sort of an error in doing that, you just don't count the days right, leads you to be disqualified from voting. Here, it just seems so intentional. There's no effort on the part of the people who are trying to register to actually comply with the state's requirement. Does their sort of intentionality and not like making an effort to comply with it, I mean, that just doesn't, I guess, error and omission here, it seems to be sort of an accident or a mistake. Am I just reading that wrong? I understand the position that you're taking, Your Honor. I would revert back to the plain text, and the plain text does not permit any inquiry into the motives of the person whose application is being denied. The plain text simply asks whether that requirement, the wet signature, is materially determining voter qualifications, and if it isn't, the text doesn't permit some additional inquiry as to what led to that error or omission. It's an error because it deviates from what is required, or it omits that there's a wet signature. I see that I'm well past my time. We've held you over, so you'll have your full four minutes of rebuttal time remaining. Thank you, Your Honor. Thank you so much. All right, Mr. Maros, let's hear from you. May it please the Court. The District Court found that a signature made by hand, on paper, and in ink carries a solemn weight that digital signatures do not. When you say found, that sounds like a fact finding. When I say that, I meant that the District Court concluded this. Concluded, as a matter of law. Yes, as a matter of law. The Court said it's a matter of common sense, didn't it? Or was that your brief? I get the two confused. The Court said something like, we all know to be true that. Yes, sir. Yes, sir. They say we all know that it is because appellants argue that there's no difference between an original signature and a signature on a digital pad or some other form. They don't actually specify what kind of signature. They just say any signature but original signature. And they say that there's the exact same. And the District Court said, we know that not to be true. So I will just say that, like, for my own purposes, I think that is the Achilles heel of your position that we're here on a motion to dismiss. And it sounds to me like the arguments that you're making in your brief, I actually find pretty persuasive. But I actually, but I also find them pretty factual and pretty empirical. And it seems like the kind of thing that you need some record evidence to substantiate. And the other cases in this little bucket of cases that we've been reading, so like the Third Circuit, Summary Judgment, Fifth Circuit, Summary Judgment, Ninth Circuit, Summary Judgment, and a bench trial. And so I don't know. It just feels to me a little too quick for the District Court to have said, essentially, like, I'm going to take it as judicially noticeable that. Yes, Your Honor. Well, I think it's important to note, like Judge Carr said, yes, we do discuss common sense in our brief. But it's important to note that while there was discussion of, you know, it just makes sense that original signature is more reliable, the District Court didn't actually ground its decision on that. And the court actually doesn't have to agree with that position, nor does it have to even get there to refer to the District Court's opinion. Because if you'll notice, and I don't have the record site, but the District Court's decision, and I'll quote in here, the real question is whether plaintiffs have alleged facts plausibly showing that the wet signature requirement is immaterial. They have not. So the District Court had this discussion where it did not solely rely on common sense. It did cite a number of cases, an amount of case law to show that an original signature, you know, is more reliable, is more meaningful than a digital signature. But it relied on the actual allegations in the amended complaint to determine whether they, the appellants, had alleged facts plausibly showing somehow that an original signature, a regular signature requirement is material, which they acknowledge in their briefs, you know, in the amended complaint and here. But somehow an original signature is not material. They simply don't plausibly explain how those two are different. And as Judge Fraser-Newsom mentioned in the Fifth Circuit's decision in Vote.org, the Fifth Circuit said that, you know, those two requirements, you know, fall or stand together. They don't plausibly explain how somehow requiring a signature in hand is not material where a regular signature would be material. And Judge Garza, I apologize for cutting you off. I know you were saying something. Do I look like I was dying to ask a question? You were worried with something, so I want to make sure. I'm just, I'm a little bit puzzled about how they could make that allegation. They've alleged that, as I understand it, I read it and maybe I'm reading too much into it, that it doesn't add anything about the verity, solemnity, et cetera, which is encompassed in its immaterial. But what else would you have them say short of a fact finding? Well, I think that's part of the issue here because it's not plausible for them to admit on one hand that requiring a signature is material to the qualifications. But then requiring that signature in a handwritten form with ink on paper is somehow not material. Of course, I tentatively disagree with you there. I mean, if requiring a wet signature on the application form was material, then why do you let all these people with driver's licenses automatically skip that? Well, that's another important point to note because the materiality provision is a narrow remedy. It's a narrow provision that simply asks whether the information required on the application is material to the voter's qualifications. It does not say anything about is it a least restrictive requirement? Is it somehow better than other requirements? Yeah, but I think Judge Carnes' point is like if material means anything, it means that it's sort of good to have. It's, you know, appropriate for you to ask for or something like that. And if there are lots of people, let's just assume 99.9% of registered voters in Florida registered through the process where they didn't have to provide the signature. I mean, under any definition of material, would it be material for you to have the signature? Yes, Your Honor. Because the important, another important point to note is that... Why? My friends on the other side say that... While reading of the word material says that if you don't need it for 99.9% of people who register, it's still material. Well, some of my friends on the other side say that materiality does not mean minimal relevance, but it absolutely does. Because this court in the United States... Fine, fine, fine, fine, fine, fine. But answer his question to the 99.9%. That's minimally relevant. Yes, Your Honor. So the situations where an original signature is not required, where the digital signature, there's already a process in that under state law where someone has to show up at a government agency and actually have to use their hand, whether it's on a digital signature pad or elsewhere, has to use their hand to actually sign the document. So it's not a situation where in one circumstance, they can require a wet signature. In all other circumstances, they can just allow you to send an email affirming to the qualifications. But in order to sort of like knit up that theory of materiality, wouldn't you have to say, wouldn't you have to have somebody from the DMV, I suppose, you call that person in evidentiary hearing and say like, hey, when you watch the person pick up the stylus and write that thing, are you really like kind of hawking them to make sure they're making the mark correctly or something? It just seems like we need facts. Well, no, Your Honor, because as my friend said, there's nothing in the text showing that there's any intent element. All materiality provision requires is the requirement material. And in all of those other circumstances, all state law requires is some form of signature. This original signature requirement is not requiring an additional type of signature. It's not requiring a certain type of ink. It's simply saying that in certain circumstances where the appellant's members or where someone would not have a driver's license, ID card or social security card, they have to use a handwritten signature. In all those other circumstances, they can use a digital signature because they have already shown up to the DMV to actually use that handwritten signature. Your point there is just like this is comparing apples to oranges, right? I mean, if you show up to the DMV and you've already signed stuff or you've got a social security card that you've identified, like we're not worried about your identity. But for people who can't do that, then we need your wet signature. That's your point. Yes, Your Honor. You know, one thing that's interesting about the Fifth Circuit's opinion, and I'm going to ask opposing counsel this too when they come back up. I mean, I've read it several times. It doesn't have any facts in it at all as far as I can tell. So I guess like if we follow the Fifth Circuit's opinion, I guess, could you just address the Fifth Circuit's opinion? I mean, I think under your position, if we follow it, then we just affirm, right? Yes, sir. I mean, we would not say that this court has to get into the solemnity of an original signature. And in fact, we argue, as I mentioned before, that the district court did get there, but it didn't ground its reliance on that actual finding. There was no actual factual finding. It concluded as a matter of law, but it did simply rely on whether they plausibly alleged that somehow an original signature is not material. So this court doesn't have to go to the Fifth Circuit's opinion and actually find public policy reasons for an original signature requirement because it's actually clear that under this court's case law, when there is a material requirement like in the Browning case, when there's a material requirement, the state gets to choose. The state doesn't have to show that the requirement is somehow better than others, least restrictive. It simply gets to choose among material requirements. And an important point to note is that— And does it also have like entirely free reign to determine what is and isn't material? Like is there any limit to that proposition? Yes, there certainly would be. I mean, the appellates treat an original signature as somehow a requirement beyond a regular signature. What we're saying is that an original signature is a self-enclosed form just like a signature on a pad. We're not saying that there are additional instructions beyond the original signature. The DSB Cobb case they mentioned had the color of ink. The other case that they mentioned about requiring age, a number of days, that's a needlessly technical kind of instruction or requirement beyond simply providing a red signature. We don't say what hand you have to use. We don't say what color ink you have to use. We just have to say if you don't have these other indicia of reliability that allows you to use a digital signature, you simply have to sign on a paper in some form of ink. Knowing the context of the Civil Rights Act of 1964, the original signature requirement has always been the standard. So up until the last 20 years in Florida, the only way you were allowed to sign an application is by an original signature. So Florida actually reduced that requirement in 2005 by allowing exceptions to it for certain situations where the legislature found that, well, in these circumstances, we trust that there is some reliability, so we're not going to require it. So they've actually reduced that requirement, and it just simply can't be that reducing a requirement that had always been the requirement somehow makes that requirement less material. Got it. Nor can we say that the drafts of the Civil Rights Act of 1964 would have thought that the only way of signing an application was immaterial when they were drafting the Civil Rights Act. That's the only method, and it was the only method for 30 years. And if that were the standard, then, you know, by signing the material, they would have invalidated every single signature requirement in the entire country. Got it. Very good. Okay. Mr. Dickey, let's hear from you. Five minutes. Thank you, Your Honor. Oh, sorry. I've got Dickey on the... Yes, I think there must have been a mix. Okay. Very well. That's all good. I'll be Connor Woodfin for the Republican National Committee. Very good. Welcome. Sorry to have thrown you. Now, may I please support? There are three independent reasons why the plaintiffs lose on the merits. Original signatures are material. The requirement doesn't deny anyone the right to vote, and the materiality provision does not preempt state law. With my brief time, I would like to focus on that last reason, which we think is the most textually sound reason why the materiality provision does not apply here. In short, the plaintiffs have confused what it means to be eligible to vote and what it means to be qualified under state law to vote. There's a difference between a voter who is eligible to vote and a voter who goes through the necessary steps to prove their eligibility to the state and become a qualified registered voter who can cast a ballot. In courts of... Just so I understand, I think I know where you're headed. So is your position that anything that a state codifies and calls a qualification, that there's no limit to what the states can do? So it's not so much what the state calls a qualification. If you look in state law and in judicial decisions, of course, they're going to use the words qualification and eligibility interchangeably and contradictory manner. Really, the question is, what does it mean when the materiality provision says qualified under state law? But I think, I mean, I think what you mean to say is when it says qualified under state law, qualified under whatever old thing the state says. It means the requirements that the states impose for a voter to cast a ballot or to be registered to vote in most states. And, you know, the only reason they don't use the word registered... Why isn't that just completely circular, though? I mean, you know, if the state requires it, then you can, then it's material. If the state doesn't require it, then it's not material. So it's, this gets back to really maybe one of your other points. You drew this from error or omission that this really refers to registrars who are imposing extra textual requirements, extra statutory requirements in an arbitrary manner on voter applicants. Yes. I mean, what if state law says, you know, it's not a wet signature requirement, but it's a requirement that you have to identify whether you are a junior or a senior, that that is inherently part of your name. And so that, you know, when you, when you sign up to vote, it's not, you haven't completed it unless you check the box. There was always that box about, like, do you want to be a junior or a senior, which I leave blank because I'm neither. But Florida says there's a not applicable and you got to check that or you can't vote. So that would be material because Florida says you have to do it, right? Yes, if it's required under state law. Okay. That just, I don't understand how that could possibly be the case because the statute says if such error or omission is not material in determining whether such individual is qualified under state law to vote in such election, it seems like you're saying there is no, any error or omission isn't necessarily one that means that, I mean, the error or omission is going to be something that you're required to do under state law, right? That's the nature of an error or omission. So, you know, I mean, this court assessed in Browning that there's a difference between an error that gets to the fact of, you know, the qualification itself. Maybe a good example of this actually appears in the DOJ's amicus brief, which they withdrew. But the Louisiana, you know, Constitution back when the 1964 Civil Rights Act was actually being enforced, you know, the Louisiana Constitution prescribed a voter registration form and it contained blanks for days, months, and years a voter has been alive. But what the United States misses is the Constitution also contained a requirement that registrars were to register to the voter so long as that information showed that the voter was over the age of 21. So the Constitution, state law, did not require that voters have to list the exact number of years, months, and days they've been alive. That was an extra requirement. But your position would be if Florida codifies that requirement, fine. So if they codify the requirement as a requirement, yes. But there, of course... Even though that was that I think everybody would acknowledge that's like precisely the thing that the materiality provision was designed to prohibit. So, no, it targeted, and I've not seen an example brought up where state law codified... Fine, but your position theoretically, the logical implication is if Florida wants to do it, have at it. If it's a requirement, yes. And I'll just note, there are other explicit textual requirements that federal law bans. Literacy tests were brought up. But not the exact number of days. These are... No, that would be if it's an extra... What it banned was the arbitrary enforcement of those exact number of days by these rogue registrars in a discriminatory manner. So we would ask you to affirm for that. Yeah, please. So I guess just one concern I have about this argument is that the phrase under state law modifies qualified. So it modifies the idea of qualifications. The statute seems to set out two separate things. So you've got an error or omission, and then that is what we're asking is material or not. And then there's a separate thing about qualifications under state law. And it seems like what you're saying is there are not two separate things. They're just the same thing. So maybe give you two points of textual context for this. So qualified under state law is defined in subsection E, and it means qualified according to the laws, usages, and customs of the state. District courts have determined that interpreting that phrase, that that means both the substantive qualifications, which are what the plaintiffs focus on here, voting age, citizenship, residency. But it also incorporates the procedural qualifications. Sending in your ballot application or registration application on time to the proper election officials and satisfying the requirements that the state has says are essential in order for it to determine your eligibility. The other point of context that I think is helpful here is you can just look at every time the statute uses the word qualified. It's about a dozen times throughout the statute. Every time Congress used that word in this section, it's referring to a voter who can go cast a ballot. It's not referring to a voter who is eligible to go register to vote. It's referring to someone who has satisfied all of these substantive and procedural qualifications to prove to the state that they're over the age of 18 citizen resident. There are several points in this, but the, you know, the basic point is qualified means going through the entire process to prove to the state that under state law, you're eligible to cast a ballot. It's only those arbitrary enforcements of extra statutory requirements that go beyond that the materiality provision enforces. Tax history and case law supports that. Okay. Very well. Thank you so much. Mr. Encuanto, you've got four minutes of rebuttal time remaining. And maybe if you don't mind, at some point during the four minutes, it sounds like from Mr. Maris' presentation, he said it sounds like maybe this sort of all boils down to twitball, you know, Twombly and Iqbal, like sort of plausibility that the district court was within its discretion at 12b-6 to say, I can exercise some common sense and I know what's plausible and not, and this is implausible. It may come down to that because we're in sort of 12b-6 land. So, would you just address Twombly and Iqbal and plausibility? Certainly. And I'll start with that, Your Honor. When you look at plaintiff's allegations, it contains numerous allegations that should have been accepted that suggest that the wet signature requirement is not material in determining voter qualifications. And that last part is important because my friends on the other side have been talking about materiality in the abstract. For instance, the Uniform Electronic Transactions Act states that if a provision of law requires a signature, an electronic signature satisfies such provision. Now, that act doesn't necessarily apply to elections, but it's another indication that elsewhere Florida law recognizes that electronic signatures have the same stature or can have the same impact as a wet signature. Second, plaintiff's alleged that, as we've discussed, Florida accepts registration applications online from individuals who have a driver's license or a state ID. Now, those individuals do not have to sign in wet ink. Now, remember, the Secretary of State and the county supervisors, that they have asserted their argument is that there is a certain stature or there's a solemn requirement, some aspects of solemnity that occurs when you sign in wet ink. Well, the fact that someone who registers online has previously signed an entirely separate document says nothing about solemnity when reviewing the voter registration application and signing that voter registration application. So, and another point on that, so because of that, you could have the same voter, a voter who has identification with the DMV, that voter can register online without any signature and just add their signature with a click of a button. But if that same voter were to submit a paper application by mail instead, that voter would be required to sign that application in wet ink. So, if you can impose those different requirements on the same voter who has ID to DMV, if you can require that voter to sign in wet ink, but allow that voter to not sign in wet ink when they're registering online, that is a definition of something that's immaterial in determining voter qualifications. Let me get you to it. So, you've made a great argument there. None of that really seems to have to do with the facts, though, I guess, and if I look at the Fifth Circuit's case and our own case in Browning, we don't seem to look at facts in Browning either. We seem to do what you're kind of suggesting, which is kind of like a balancing, look at other state laws, look at things like that, look at the Supreme Court's decisions on different kind of registration requirements and kind of make a judgment call at that. Could you just address that concern I have that, like, it seems like a remand for sort of factual development would be not really consistent with your arguments and kind of inconsistent with case law? Certainly. I'll start with the Fifth Circuit. And, Callen, the Fifth Circuit— I realize you disagree with the Fifth Circuit's legal— If we accept the Fifth Circuit's analysis, there are several instances where you can see that they incorporated factual determinations, and I'll give you a specific site, 89F 4th at 485 and 488. The court considered the form of the way the paper registration form appears. The court considered the warnings that appear next to the signature on the voter registration form in Texas, which may be different from Florida. The court considered the screenshot of Vote.org's web application, which is clearly going to be different in Texas than it would be for anything Vote.org may develop for Florida. And the court considered all that under the totality of circumstances. And as I mentioned before, it's a contextual analysis, and it includes all those different facts, in addition to the fact that Your Honor even referenced, which is consider, you know, the vast majority of individuals in Florida register online without providing a wetting signature. Then how does that fit into the determination? Well, I mean, the Fifth Circuit didn't consider any evidence like that, right? I mean, and neither did William Browning, I don't think. So the Fifth Circuit did not consider that, but the Fifth Circuit's analysis wasn't necessarily finite, right? It would still go into the totality of circumstances. And Browning, the reason facts were not considered was because the Help America Vote Act required identification. And it required the identification numbers to be matched up with a Social Security database or the DMV database. Now, going back to what facts would be necessary here, well, another fact I mentioned in my opening is how election officials actually use the information on the application to verify voters. One fact that would be pertinent is the idea that election officials simply review the ID numbers that are required to be on the voter registration applications because of the Help America Vote Act. And election officials, when they receive that paper application, they're required to compare the ID numbers, or they do compare the ID numbers from, with the application against state databases like the DMV database or the Social Security Administration database. And if that's what they do to verify an individual's identity and to confirm that the person who filled out or submitted that application is indeed a voter, then where does that leave the argument that the wet ink signature, as opposed to an image signature, an electronic signature, is material in determining qualifications, right? Okay. Sorry, we've let you go over. I think we've got your case. Thank you so much. Appreciate the presentation. That case is submitted. We'll move to the second case of the day. Which is Brooks v. Southside 22-10.